# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **COREY PHILLIPS,**<br>c/o FG+G<br>50 Public Square, Suite 1900<br>Cleveland, OH 44113,<br><br>Plaintiff,<br><br>-vs-<br><br>**AKRON POLICE OFFICER CALEB BODJANAC**<br><br>**AND**<br><br>**THE CITY OF AKRON**<br><br>c/o Akron City Attorney<br>217 S. High St. #203<br>Akron, OH 44308,<br><br>Defendants. | Case No.<br><br>Judge<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Corey Phillips, for his Complaint against Akron Police Officer Caleb Bodjanac and the City of Akron, states as follows:

## INTRODUCTION

1. On November 11, 2025, Akron Police Officer Caleb Bodjanac shot at Plaintiff Corey Phillips 15 times. Corey was unarmed, alone, not threatening anyone, and not trying to flee—he was just standing there. Within seconds of pulling up on him, without waiting for backup or even assessing the situation, Officer Bodjanac jumped out of his car and unloaded his gun into Corey. Corey now sues for the excessive use of force and misconduct that caused him permanent injury.

## Jurisdiction & Venue

2. This Court has jurisdiction over Plaintiff's federal claims pursuant to the Civil Rights Act, 42 U.S.C. §1983 *et seq*.; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States. The Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District under 28 U.S.C. §1391(b). The events giving rise to Plaintiff's claims occurred in Akron, Ohio, in this judicial district.

## Parties

4. **Plaintiff Corey Phillips** is a 37-year-old resident of Ohio. The at-issue attack against him took place in Akron, Ohio.

5. **Defendant Caleb Bodjanac** was, at all times relevant to the allegations made in this Complaint, a duly appointed police officer employed by the City of Akron, acting within the scope of his employment and under the color of state law. Upon information and belief, he still works as an Akron police officer in the City of Akron.

6. **Defendant City of Akron** is an Ohio municipal corporation in Summit County where the events at issue in this Complaint occurred. The City of Akron is a unit of local government organized under the laws of the State of Ohio residing in the Northern District of Ohio and acting under the color of law. The City is a "person" under 42 U.S.C. § 1983. The City operates the Akron Police Department. The City is the employer and principal of the Defendant Officer in this case. The City is responsible for its own policies, practices, and customs and those of the Akron Police Department.

## FACTS

7. On November 11, 2025, Plaintiff Corey Phillips was walking down the sidewalk across from Karam's Lounge in Akron.

8. Corey was unarmed.

9. People in the bar had called 911 because some of them believed Corey had a gun.

10. Akron police were responding to investigate.

11. Defendant Akron Police Officer Caleb Bodjanac drove his car up to Corey by himself while Corey was already away from the bar, alone, with nobody around, on the sidewalk.

12. Corey was not threatening the Officer nor anybody else nor attempting to flee.

13. Backup was on the way.

14. Within seconds of pulling up, without waiting for backup or further investigating or attempting any other, safe approach to the situation, Officer Bodjanac got out of his car and shot Corey 15 times.

15. Multiple close-range gunshots struck Corey and he collapsed.

16. After shooting Corey, Officer Bodjanac *did* wait for backup—he left Corey on the ground, bleeding, at gunpoint, and kept shouting at him as he lay there.

17. Minutes passed, and then other police and EMTs came to render aid.

18. In addition to the violation of his rights, Corey suffered permanent injuries. He had extensive gunshot wounds requiring surgery. A young man, early in his career, he will never work in his field again. He will never be the same.

19. Defendant the City of Akron and its police department also bear responsibility for Defendant Bodjanac's unlawful use of lethal force against Corey.

20. Police misconduct, and specifically the unlawful use of force and deadly force, is a deep-seated problem in the Akron Police Department, so ingrained in the culture as to have the force of official policy.

21. Here, Akron was on notice that Officer Bodjanac had similar unreasonable uses of force in the past but failed to ever discipline or retrain him to prevent it from predictably happening again; never held him accountable for the violations at issue here including never disciplining or remedying his misconduct, thus ratifying it in this instance; and had at the time a pattern, practice, and custom of tolerating its officers' widespread use of force including deadly force during police encounters with unarmed subjects or other subjects who presented no justified reason for using deadly force.

22. By the time of this shooting, Akron police had engaged in a known pattern of prior similar incidents of excessive force.

23. Just in the few years immediately preceding Officer Bodjanac's shooting of Corey, Akron police shot and killed multiple people who were unarmed or otherwise not doing something that justified deadly force, needlessly and unreasonably and in circumstances similar to those at play here. For example:

    a. In 2022, Akron police fired 94 shots within a matter of seconds and killed Jayland Walker, who upon information and belief was not armed at the time of the shooting or was not behaving in such a way that could legitimate the use of deadly force. The City and police department found the killing in compliance with department policy and, upon information and belief, ratified it and failed to take

any action to discipline or train or retrain officers or otherwise prevent a repeat occurrence. The City did, however, settle an excessive force lawsuit arising out of that case.

b. In 2024, Akron police filed multiple shots at and killed 15-year-old Jazmir Tucker, who upon information and belief was not armed at the time of the shooting or was not behaving in such a way that could legitimate the use of deadly force. The City and police department found the killing in compliance with department policy and, upon information and belief, ratified it and failed to take any action to discipline or train or retrain officers or otherwise prevent a repeat occurrence. The City did, however, settle an excessive force lawsuit arising out of that case.

c. In 2024, Akron police filed multiple shots at Michael Jones, who upon information and belief was similarly not behaving in such a way that could legitimate the use of deadly force. The City and police department found the killing in compliance with department policy and, upon information and belief, ratified it and failed to take any action to discipline or train or retrain officers or otherwise prevent a repeat occurrence.

24. Going back even further, since the year 2000, the Akron police have shot and killed dozens of people—by any available source's count, more than one person per year.

25. The Akron police department has one of the highest rates of use of deadly force in nonviolent or unarmed police encounters in the entire country.

26. The department has permitted this dangerous culture to persist.

27. A 2026 audit of police uses of force in Akron found that, for example, in the year 2024, the year preceding this shooting, out of 301 police use of force incidents, police supervisors found only 1 to be out of policy.

28. An audit of Akron police practices during the time period immediately preceding this shooting documented multiple Akron police officers who, similar to Officer Bodjanac, had extensive use of force histories but who the department did not appropriately discipline or retrain or even flag for early warning intervention.

29. Upon information and belief, despite public outcry, third-party auditing and oversight, and extensive litigation, Akron and its police department have not appropriately disciplined or retrained their police or otherwise take action to remedy the persistent similar policing problems evident in the above-described culture nor specific examples.

30. The City of Akron also knew about prior similar misconduct involving Bodjanac himself, but failed to discipline, train or retrain, or properly supervise him to stop him repeating or escalating his unconstitutional behavior.

31. Officer Bodjanac's deficient training and discipline and use of force history put Akron on notice that his unreasonable use of excessive force against Corey was inevitable. Department supervisors who reviewed his prior uses of force and related misconduct all the way up the chain of command took note that Bodjanac needed better training and needed to make his tactics safe and lawful—but, upon information and belief, Akron failed to require any real training or render any formal discipline to make this happen.

    a. When Akron hired Officer Bodjanac, he had only been a police officer for about 3 years, and already had multiple documented uses of force with his prior department, Canton.

b. Officer Bodjanac was only with the Akron Police Department about a year before he shot Corey Phillips. In that time, he had 14 documented uses of force in his file.

c. His force history during his short time as an officer included pointing his gun at people, using force against people who were under the influence or otherwise incapacitated, and tasing and punching people. Many of these encounters were with people who were not committing a crime, and/or with people who were intoxicated or needed a welfare check. The most recent of these was just the day before he shot Corey, in which he tackled and tasered someone after responding to an accident.

d. Akron did not discipline him for *any* of these uses of force.

e. Upon information and belief, Akron did not require any training or retraining to address this pattern, despite recognizing it was a problem.

32. When Officer Bodjanac shot Corey Phillips, he violated multiple written Akron Police Department policies. Akron written policy prohibits the use of deadly force without an immediate threat of death or serious bodily harm and requires the use of deescalation techniques before resorting to force, among other things.

33. Upon information and belief, Akron has not disciplined, trained, or even “counseled” Defendant Bodjanac on any aspect of his misconduct during the events of November 11, 2025, nor his prior similar pattern of misconduct.

34. Instead, Akron failed to appropriately discipline Bodjanac to prevent these problems from repeating themselves, then similarly failed to appropriately discipline him after this shooting.

35. Defendant Akron thus ratified Defendant Bodjanac's prior misconduct, and this ratification was a moving force causing Bodjanac to wrongfully use lethal force against Corey.

36. Upon information and belief, Akron's failures described here are part of a larger practice and custom in the Akron police department of failing to train, discipline, or supervise officers—even those with specifically known problems—such that excessive force and unsafe policing persist unchecked. This was the moving force behind the shooting of Corey Phillips.

37. As a result of Defendants' reckless behavior and excessive force, Corey was subjected to intense physical and emotional pain and suffering. He was hospitalized and in spite of surgical interventions still suffers permeant damage and scarring from the shooting.

38. As a result of his injuries, Corey suffered economic and noneconomic harms. To this day, he still suffers pain and discomfort and is limited in his physical abilities and in his ability to work in his professional field. He continues to endure physical, mental, and emotional trauma from these events.

39. Corey Phillips brings this lawsuit to remedy the civil rights violations against him and the injuries and damages they caused.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 and U.S. Constitution Fourth Amendment: Excessive Force Against Defendant Caleb Bodjanac

40. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

41. Defendant Caleb Bodjanac acted under color of state law to deprive Corey Phillips of his rights, privileges, and immunities secured by the Fourth Amendment to the U.S. Constitution, specifically, the guaranteed right to be free from the use of unreasonable and excessive force.

42. In shooting Corey Phillips when it was objectively unreasonable under the totality of the circumstances, Defendant Bodjanac violated Corey's clearly established constitutional rights.

43. This constitutional violation directly and proximately caused damages to Corey including but not limited to serious physical injuries, medical expenses, pain and suffering, and lost wages.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 and U.S. Constitution Fourth Amendment – *Monell* Claim Against Defendant the City of Akron

44. Plaintiff incorporates by reference all foregoing factual allegations as if fully restated herein.

45. The City of Akron is liable for the violations of Corey Phillips's constitutional rights as described in this Complaint by virtue of its official policies and practices.

46. The actions of Defendant Caleb Bodjanac, as alleged above, were taken pursuant to one or more interrelated *de facto* policies, customs, patterns, and/or practices of civil rights violations and unconstitutional practices of Defendant the City of Akron. These *de facto* policies, customs, patterns, and/or practices were approved, encouraged, and/or ratified by City policymakers with final policymaking authority, and were thus a moving force behind Bodjanac's violation of Corey Phillips's constitutional rights.

47. The City's policies, practices, and customs included failing to adequately train, supervise, monitor, counsel, and discipline officers who engaged in constitutional violations including the unreasonable use of force, use of deadly force, and use of force and lethal force against unarmed people and people who are intoxicated, need help, or otherwise do not justify the use of deadly force, as described in this Complaint.

48. These widespread practices were so well-settled as to constitute *de facto* policy in the City. These practices were allowed to persist because final policymakers exhibited deliberate indifference to the problems, thereby ratifying them. This policy, ratification, failure to train, and custom of tolerance caused individual police officers including Defendant Bodjanac here to violate peoples' rights with impunity.

49. Defendant the City of Akron, through its police department and final policymakers approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its employees and/or agents, including Defendant Bodjanac, and is consequently liable for those, pursuant to 42 U.S.C. § 1983.

50. Defendant the City of Akron, through its police department and final policymakers, ratified its police's wrongful and unconstitutional use of force on one or more prior

occasions before November 11, 2025, and this ratification was a moving force causing Defendant Bodjanac to engage in similar unconstitutional action.

51. Defendant the City of Akron is required to ensure that the policies, practices, and customs of its police department, including its individual police officers, comply with federal and Ohio law concerning the treatment of arrestees, detainees, and members of the public. The City was on notice of this but failed to fulfill this responsibility.

52. Defendant the City of Akron failed to properly train Defendant Bodjanac and other police regarding constitutional use of force and use of deadly force and other safe and lawful policing strategies including how to handle solo police encounters and engage with people who may have diminished capacity or be intoxicated. It was so obvious that police officers would encounter such individuals in their regular duties—and that this officer had done so and had issues in the past—that the City's failure to provide adequate training was deliberately indifferent.

53. The City implemented and maintained these and other policies, practices, and customs with deliberate indifference to Corey Phillips's constitutional rights.

54. The City's policies, practices, and customs, including but not limited to those described in this Complaint, were a moving force behind the violation of Corey Phillips's rights.

55. Defendant the City of Akron's unconstitutional customs, patterns, and practices, together with its ratification of unconstitutional misconduct and inadequate training, directly and proximately caused the damages to Corey Phillips described here.

## THIRD CLAIM FOR RELIEF
## Ohio State Law: Reckless Breach of Duty
## Against Defendant Caleb Bodjanac

56. Plaintiff incorporates by reference each of the foregoing factual allegations as if fully restated herein.

57. Defendant Bodjanac had a duty to the public at large, including to Corey Phillips, to exercise due care, to act in a lawful and reasonable manner, and not to act in a manner that was willful, wanton, or reckless.

58. As a law enforcement officer, Defendant Bodjanac had a duty to protect members of the community, including Corey Phillips.

59. Defendant breached these duties, directly and proximately causing Corey Phillips's injuries.

60. A reasonable person in Defendant's position would have recognized that his conduct created an unreasonable risk of physical harm to Corey Phillips. This risk was substantially greater than that which would have made his conduct negligent.

61. Defendant Bodjanac knew or should have known that his conduct would or could cause serious physical injury to Corey Phillips but disregarded that knowledge.

62. In the manner described more fully above, Defendant Bodjanac breached his duties when he failed to exercise due care, failed to protect MCorey Phillips from harm instead harming him, and acted in a reckless and/or willful and/or wanton manner.

63. Because Defendant Bodjanac breached these duties of care in a manner that was reckless and/or willful and/or wanton, he is not entitled to the immunities set forth in Ohio R.C. § 2744.01 *et seq.*

64. As a direct and proximate result of this reckless misconduct, Corey Phillips suffered injuries and damages including but not limited to serious physical injuries, medical expenses, pain and suffering, and lost wages.

**FOURTH CLAIM FOR RELIEF**
**Ohio State Law: Assault and Battery**
**Against Defendant Caleb Bodjanac**

65. Plaintiff incorporates by reference each of the foregoing factual allegations as if fully restated herein.

66. Defendant Bodjanac's attack against Corey Phillips created in him the apprehension of an imminent, harmful, and offensive touching and constituted a harmful touching, knowingly and without legal justification.

67. Defendant Bodjanac's actions were intentional.

68. In the manner described more fully above, Defendant Bodjanac acted in a reckless and/or willful and/or wanton manner and therefore are not entitled to the immunities set forth in Ohio R.C. § 2744.01 *et seq.*

69. As a direct and proximate result of Defendant Bodjanac's misconduct, Corey Phillips suffered serious damages including but not limited to serious physical injuries, medical expenses, pain and suffering, and lost wages.

**PRAYER FOR RELIEF:**

Plaintiff prays that judgment be entered in his favor on all counts and prays that the Court:

A. Award Plaintiff compensatory damages in an amount to be shown at trial;

B. Award punitive damages against all Defendants in an amount to be shown at trial;

C. Award Plaintiff reasonable attorney's fees, costs, and disbursements;

D. Award Plaintiff pre and post judgment interest;

E. Grant Plaintiff such additional relief as the Court deems just and proper.

**TRIAL BY JURY ON ALL CLAIMS FOR RELIEF DEMANDED.**

Dated: November 10, 2026

Respectfully submitted,

/s/ *Elizabeth Bonham*
FG+G
Sarah Gelsomino (0084340)
Marcus Sidoti (0077476)
Elizabeth Bonham (0093733)
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216.241.1430
F: 216.621.0427
sarah@FGGfirm.com
marcus@FGGfirm.com
elizabeth@FGGfirm.com

*Counsel for Plaintiff*